**Ray William FINE, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–7828.

Court of Appeals of Alaska.

April 27, 2001.

---

**28.** 736 P.2d 363 (Alaska App.1987).

**29.** *Id.* at 367.

Rex Lamont Butler, Rex Lamont Butler & Associates, Anchorage, for Appellant.

Leonard M. Linton, Jr., Assistant District Attorney, Susan A. Parkes, District Attorney, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

COATS, Chief Judge.

Ray William Fine was convicted of criminally negligent homicide, assault in the third degree, and driving while intoxicated. Superior Court Judge Larry D. Card sentenced Fine to nine years with two years suspended, revoked his driver's license for the remainder of Fine's life, and ordered him to pay $57,804 in restitution. Fine appeals, arguing his sentence is excessive. We agree with Fine and remand the case for resentencing.

On May 31, 1999, driving while intoxicated, Ray William Fine crossed over the center line and struck a motorcycle driven by Lyman Smith, who was accompanied by his ten-year-old grandson, Derek Flensburg. Smith died of his injuries; Flensburg fractured his left hand.

A police officer transported Fine to the hospital for mandatory blood and urine tests that revealed Fine had a blood alcohol level of .08. Fine entered into a plea agreement in which he pled no contest to criminally negligent homicide, a class C felony, assault in the third degree, also a class C felony, and driving while intoxicated, a class A misdemeanor.

Fine was twenty-nine years old at the time of the collision. He had a prior felony conviction for a first-degree burglary he commit-

ted in Hawaii. According to the Hawaii presentence report, Fine, then age nineteen, entered a residence in the early morning hours. He took a watch and $230 in cash from a wallet and then fell asleep in the bedroom where the owners of the home were sleeping. The owners found Fine asleep on the floor. Fine's blood alcohol was tested at .064. Fine reported to the Hawaii court that he was drunk at the time of the offense. The Salvation Army evaluated Fine as part of the presentence investigation and concluded that he had a problem with abuse of alcohol. In December 1991, the court sentenced Fine to a deferred sentence. But he failed to comply with his conditions of probation and the court imposed a judgment of conviction in 1993 and sentenced Fine to a year to serve followed by five years of probation. The record does not show precisely why the Hawaii court revoked Fine's deferred sentence. In addition to the prior Hawaii burglary conviction, Fine had committed two traffic violations in Alaska: improper use of or not wearing a safety belt, and speeding ten miles over the speed limit.

In the present case, Fine reported to the presentence report author that he first began to drink at the age of fifteen on an experimental basis. He stated that he occasionally drank through high school but that alcohol never became a problem for him. He reported that his current use of alcohol consists of occasional drinking at birthdays and selected holidays.

Because of the prior Hawaii burglary conviction, Fine was a second-felony offender for purposes of presumptive sentencing and therefore faced a two-year presumptive sentence on the two class C felonies.[1] In addition, Superior Court Judge Larry D. Card found two aggravating factors: that Fine's conduct created a risk of imminent physical injury to three or more persons and that Fine's prior felony was a more serious offense than his present offense.[2] In sentencing Fine, Judge Card pointed out that there was no evidence that Fine had engaged in "hugely erratic driving" and that Fine's blood alcohol level was not particularly high. He pointed out that juries in similar cases tend to convict the defendant of criminally negligent homicide rather than the more serious crime of manslaughter, a class A felony. He considered the fact that the legislature had enacted legislation making criminally negligent homicide a class B felony and that the effective date of that law was six days after Fine's offense. He considered Fine's presentence report in the 1991 Hawaii burglary offense and the facts of the present offense and concluded that Fine had a long-term untreated problem of abusing alcoholic beverages, which made him a danger to society.

Judge Card imposed a sentence of five years with one year suspended on the conviction for criminally negligent homicide and imposed a consecutive sentence of four years with one year suspended on the conviction for assault in the third degree. He also imposed a concurrent sentence of one year for driving while intoxicated. Thus, Fine's composite sentence is nine years with two years suspended.

Judge Card recognized that the sentence that he imposed exceeded the five-year maximum sentence for Fine's most serious offense, a class C felony. Therefore, under *Mutschler v. State,*[3] Judge Card was expressly required to find that the aggregate term of imprisonment was necessary in order to protect the public.[4] Judge Card made that finding, concluding that Fine was a long-term untreated abuser of alcohol who was a danger to the public. He pointed out that Fine had failed to satisfactorily complete his probation for the Hawaii burglary conviction. Judge Card imposed restitution in the amount of $57,804 and required Fine to undergo a substance abuse evaluation while incarcerated and to abide by any of the Department of Correction's recommendations, to include in-patient treatment for up to one year. In addition, Judge Card revoked Fine's license to drive for the remainder of his life.

1. *See* AS 12.55.125(e)(1).

2. *See* AS 12.55.155(c)(6); (c)(7).

3. 560 P.2d 377 (Alaska 1977).

4. *See id.,* at 380–81; *Marino v. State,* 934 P.2d 1321, 1334 (Alaska App.1997).

■ Fine appeals to this court, arguing his sentence is excessive. We agree. In order to impose a sentence in excess of the five-year maximum sentence for Fine's most serious offense, Judge Card had to find that such a sentence was necessary to protect the public.[5] Judge Card's conclusion that Fine was a chronic alcohol abuser who was a danger to the public is not supported by the record. Judge Card appeared to accept that Fine had not engaged in grossly erratic driving before the collision and that Fine's blood alcohol level was not particularly high. He concluded Fine's offense was properly charged—that Fine committed criminally negligent homicide rather than the more serious offense of manslaughter. Fine has no history of driving while intoxicated or other alcohol-related offenses except for his 1991 Hawaii burglary conviction. The facts of the Hawaii conviction and Fine's current offense suggest that Fine might have had a continuing problem with alcohol abuse that could have made him dangerous. This history certainly supports Judge Card's emphasis on diagnosis and treatment. But the record before this court is insufficient to support Judge Card's finding that Fine has a long-term history of alcohol abuse that made him a threat to the public. We therefore conclude that Judge Card's finding that it was necessary to impose a sentence of over five years of imprisonment to protect the public from Fine is not supported by the record.

■ Judge Card also appears to have placed great emphasis on the legislature's reclassification of criminally negligent homicide from a class C felony to a class B felony. Although Judge Card could properly consider this legislation as a recent expression of legislative intent,[6] Fine was entitled to be sentenced under the law that applied to him at the time of his offense.

We accordingly conclude that the sentence that Judge Card imposed is excessive.

Judge Card should not have imposed a sentence of actual time to serve that exceeded five years of imprisonment, the maximum sentence for criminally negligent homicide at the time of Fine's offense. We find no basis to conclude that it is necessary to incarcerate Fine for a period of time longer than five years in order to protect the public.

■ We also agree with Fine that the lifetime revocation of his driver's license is excessive. Alaska Statute 28.15.181 authorizes a court to revoke the driver's license of a person convicted of certain offenses including driving while intoxicated and negligent homicide resulting from driving a motor vehicle. In *Dodge v. Anchorage*,[7] we pointed out that this statute sets out the required minimum periods of revocation but does not set any maximum.[8] We concluded that the statute "authorizes a court to revoke a driver's license for any period of years, including a lifetime revocation."[9] Therefore, Judge Card's revocation of Fine's driver's license for life does not exceed the period of revocation authorized by statute. But, in *Dodge* we discussed the circumstances under which a court can impose a lifetime revocation of a driver's license. We stated that "a court should impose a lifetime revocation of a driver's license only in extreme cases when a court concludes that such a revocation is required to protect the public."[10]

In *Dodge* we concluded that a lifetime revocation of Dodge's driver's license was defensible. But Dodge was an offender who had "a twenty-year history of repeated offenses involving the operation of motor vehicles while intoxicated."[11] Dodge's numerous offenses had resulted in the death of one person, and he had clearly endangered numerous others. Dodge had established himself as a chronic DWI offender who was a worst offender and who was clearly a danger to the

---

5. *See Mutschler*, 560 P.2d at 380–81.

6. *See Whittlesey v. State*, 626 P.2d 1066, 1068 (Alaska 1980); *Reynolds v. State*, 664 P.2d 621, 630 (Alaska App.1983).

7. 877 P.2d 270 (Alaska App.1994).

8. *See id.* at 272–73.

9. *Id.* at 273.

10. *Id.*

11. *Id.*

public.[12]

Fine simply has no similar record. Fine's blood alcohol level at the time of his current offense was less than .10 percent. He has no prior record of driving while intoxicated or similar offenses. There is simply no basis to conclude that it is necessary to revoke Fine's license for the remainder of his life. To authorize this punishment for Fine would authorize such an extreme punishment for anyone else with a similarly ambiguous criminal history.

■ We conclude that there is no basis to revoke Fine's driver's license for the rest of his life. Such a punishment should be reserved for chronic offenders, such as Dodge, whose records demonstrate that they never should be allowed to drive a motor vehicle again. We accordingly vacate Judge Card's order revoking Fine's driver's license for life and remand to the trial court for further consideration of this issue.

In summary, we conclude that the sentence that Judge Card imposed is clearly mistaken.[13] The trial court is directed to impose a composite sentence of actual imprisonment not exceeding a term of five years. The court may, in its discretion, impose a suspended period of imprisonment. Additionally, the trial court's revocation of Fine's driver's license for the remainder of his life is VACATED. The trial court is directed to reconsider this issue on remand.

REMANDED.

---

**12.** *See id.* at 272, 273.

**13.** *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).