*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| EUGENE F. BOTTCHER, | ) | |
| | ) | Supreme Court No. S-14460 |
| Petitioner, | ) | Court of Appeals No. A-10660 |
| | ) | |
| v. | ) | Superior Court No. 4FA-05-01624 CR |
| | ) | |
| STATE OF ALASKA, | ) | O P I N I O N |
| | ) | |
| Respondent. | ) | No. 6781 – May 10, 2013 |
| | ) | |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Douglas Blankenship, Judge.

Appearances: David Reineke, Assistant Public Defender, Anchorage, and Quinlan Steiner, Public Defender, Anchorage, for Petitioner. Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions & Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for Respondent.

Before: Fabe, Chief Justice, Carpeneti and Stowers, Justices. [Winfree and Maassen, Justices, not participating.]

STOWERS, Justice.

## I.    INTRODUCTION

In May 2005 an intoxicated Eugene Bottcher drove his vehicle off the road, hitting a boy and narrowly missing the boy's brother. The boy who had been hit later

died at the hospital from his injuries. After Bottcher hit the boy, he continued to drive, and when stopped by a passerby who had witnessed the accident, Bottcher tried to bribe him into not reporting the crime.

Bottcher pleaded no contest to manslaughter, assault in the third degree, and failure to render assistance. The superior court sentenced Bottcher to a term of 23 years with 3 years suspended. The court also revoked Bottcher's driver's license for life. The court of appeals affirmed Bottcher's sentence and the lifetime revocation of his license. In his petition to this court, Bottcher argues that the lifetime revocation was excessive. We hold that the trial court was not clearly mistaken in finding that Bottcher's case was an extreme one in which a lifetime revocation of his driver's license was required to protect the public. We therefore affirm the decision of the court of appeals, which affirmed the superior court's lifetime revocation of Bottcher's driver's license.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

Around 9:00 p.m. on May 23, 2005, in Fairbanks, an intoxicated 61-year-old Eugene Bottcher drove his pickup westbound on Goldstream Road after having spent the afternoon and evening drinking heavily at local bars. Two boys, 13-year-old Saul Stutz and his brother 9-year-old Gabe Stutz, were riding bicycles in the grass along the roadside ditch. As Bottcher approached, his vehicle left the road and struck Saul from behind, critically injuring him and narrowly missing Gabe. Without stopping, Bottcher drove his truck out of the ditch and back onto the road.

The accident was witnessed by Dale Pomraning, who was driving in the opposite direction on the same road. After checking on the boys and calling for help, Pomraning followed Bottcher in his vehicle. Pomraning eventually stopped Bottcher at a greenhouse off the side of the road. Pomraning told Bottcher that he had struck a boy

and demanded that Bottcher return to the scene of the accident.  Bottcher initially agreed to return, but when Bottcher got into his truck, he began driving in the opposite direction.

Pomraning continued to follow, and Bottcher eventually pulled his truck into the driveway of a residence and stopped.  When Pomraning again told Bottcher that he had hit a boy,  Bottcher offered Pomraning a bundle of bills from his pocket, saying "aw, forget it," but Pomraning refused the money.  Pomraning asked Bottcher to turn himself in to the police, but Bottcher refused.  Pomraning could smell liquor on Bottcher, and he noticed that Bottcher was stumbling and slurring his speech, and had watery eyes.  When Pomraning asked, Bottcher admitted he was drunk.  Bottcher then walked away into a trailer, saying that he would take care of it the next day.  Pomraning positioned his vehicle so that Bottcher could not drive away and then walked to a nearby house to call the police, who later arrested Bottcher without incident.  A breath test administered to Bottcher at the police station registered a blood-alcohol content of approximately .237 percent.  During an interview with police the following day, Bottcher admitted to knowing he struck Saul with his truck.

Saul was transported to a local hospital and then flown to Anchorage.  He died from his injuries the next day.

Prior to the accident, Bottcher had had only one conviction, a drug offense in the 1970s, and no traffic offenses.  However, he had a long history of alcohol use and dependency.  Bottcher had regularly used alcohol as an adult, with only one year of sobriety occurring in the late 1970s. Bottcher stated that he began to drink more heavily in 2000 and began to lose control of his drinking in 2004 as a result of increased anxiety and depression due to financial difficulties.  During 2004 he was increasingly breaking self-imposed rules regarding his drinking.  He had been prescribed both Paxil and Prozac, but due to the negative side effects of mixing those medications with alcohol, he

chose to stop taking the medicine rather than quit drinking. Several of Bottcher's friends stated that he found his primary social outlet in bars. Bottcher had a habit of stopping by bars on his way home following the afternoon union call. Although Bottcher stated that when he drank he usually took a taxi or rode with friends, one friend stated that he had offered Bottcher rides on several occasions but could not recall Bottcher ever accepting the offers.

After the accident, a licensed clinical social worker interviewed Bottcher and concluded that Bottcher met the criteria for alcohol dependence. Several of Bottcher's friends also stated that he had a serious problem with alcohol. Bottcher himself acknowledged that he had become involved in a serious struggle with alcohol, the demands of which were beyond his capabilities. He also acknowledged that he was aware of the risks of drinking and driving, that drunk driving was a very serious problem in the Fairbanks area, and that he was part of the problem.

## B.    Proceedings

Following the accident, the State charged Bottcher with five counts: failure to render assistance, interfering with official proceedings, manslaughter, assault in the third degree, and driving under the influence.[1] As part of a plea agreement, Bottcher pleaded no contest to manslaughter, third-degree assault, and failure to render assistance. The State dismissed the other two counts. Bottcher was initially sentenced by Superior Court Judge Charles R. Pengilly, who found that Bottcher had acted with extreme indifference to the value of Saul's life and that Bottcher was a "worst offender" who deserved the maximum sentence. Judge Pengilly imposed a composite 35-year term with 15 years suspended, a net 20-year term to serve, and revoked Bottcher's driver's license

---

[1]    AS 28.35.060(c), AS 11.56.510, AS 11.41.120(a)(1), AS 11.41.220(a)(1)(A), and AS 28.35.030(a)(1), respectively.

for life.  With respect to the license revocation, Judge Pengilly stated, "I hope I don't have to explain why I'm going to revoke Mr. Bottcher's license for life.  I don't think that requires any explanation or any further development."

Bottcher appealed his sentence.[2]  The court of appeals remanded the case for resentencing,[3] and Superior Court Judge Mark I. Wood modified Bottcher's sentence to a composite 23-year term with 3 years suspended, resulting again in a net 20-year term to serve, with the rest of the sentence, including the lifetime license revocation, unchanged.

The case then returned to the court of appeals, which vacated Bottcher's sentence because the superior court had not sufficiently justified the sentence as required by case law.[4]  The court also vacated the lifetime license revocation, holding that Judge Pengilly's "terse comment" regarding the revocation did not satisfy the standard set forth in *Dodge v. Municipality of Anchorage*,[5] according to which the court should impose such revocations only in extreme cases when required to protect the public.[6]

The case was then assigned to Superior Court Judge Douglas Blankenship, who, like Judge Pengilly and Judge Wood, found that Bottcher's actions demonstrated extreme indifference to the value of Saul's life.  The court imposed the same sentence previously imposed by Judge Wood, a composite sentence of 23 years with 3 suspended.

---

[2]     *See Bottcher  v. State*, Mem. Op. & J. No. 5435, 2009 WL 226010, at *2 (Alaska App., Jan. 28, 2009).

[3]     *Id.*

[4]     *Id.* at *3-6.

[5]     877 P.2d 270 (Alaska App. 1994).

[6]     *Bottcher*, 2009 WL 226010, at *3.

The court also again imposed a lifetime revocation of Bottcher's driver's license, this time making more expansive findings supporting the revocation. In particular, the court considered Bottcher's long-term use of alcohol, his alcohol dependence, and the circumstances of the current offense and concluded that a lifetime revocation was necessary because Bottcher was, and would likely remain, a danger to the public when driving.

Bottcher again appealed, arguing that his sentence was excessive and that the superior court still had not adequately justified the license revocation.[7] The court of appeals held that the sentence was not clearly mistaken.[8] With respect to the license revocation, the court of appeals observed that the superior court had considered both Bottcher's long history of alcohol dependence and the seriousness of his current offenses; in light of these considerations, the court of appeals held that the superior court's decision "that a lifetime revocation was necessary to protect the public" was not clearly mistaken.[9]

Following his appeal, Bottcher filed a petition for hearing, which we granted "only as to the propriety of the lifetime revocation of [Bottcher's] driver's license."[10]

---

[7]    *See Bottcher v. State*, 262 P.3d 224 (Alaska App. 2011).

[8]    *Id.* at 227.

[9]    *Id.*

[10]    Alaska Supreme Court Order No. S-14460 (March 2, 2012).

## III. STANDARD OF REVIEW

"'Clearly mistaken' is the standard of review that we employ when reviewing sentencing decisions of a trial court."[11] This is a "deferential standard of review":[12]

> [I]t gives considerable leeway to individual sentencing judges. The "clearly mistaken" test is founded on two concepts: first, that reasonable judges, confronted with identical facts, can and will differ on what constitutes an appropriate sentence; second, that society is willing to accept these sentencing discrepancies, so long as a judge's sentencing decision falls within "a permissible range of reasonable sentences."[13]

## IV. DISCUSSION

### A. The Superior Court Applied The Correct Standard For Imposing A Lifetime Revocation Of A Driver's License.

Alaska Statute 28.15.181 directs a court to revoke a person's driver's license, privilege to drive, or privilege to obtain a license when the person is convicted of certain driving-related offenses listed in subsection (a) of the statute. Bottcher's convictions in this case fall under the first three listed offenses in subsection (a), namely: (1) manslaughter or negligent homicide resulting from driving a motor vehicle; (2) a felony in the commission of which a motor vehicle is used; and (3) failure to stop and give aid as required by law when a motor vehicle accident results in the death or personal

---

[11]     *State v. Hodari*, 996 P.2d 1230, 1232 (Alaska 2000) (citing *McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974)).

[12]     *Id.*

[13]     *Id.* (quoting *Erickson v. State*, 950 P.2d 580, 586 (Alaska App. 1997)).

injury of another.[14]   Subsection (b) of the statute requires that a "court convicting a person of an offense described in (a)(1)-(4), (6), (7), or (10) of this section shall revoke that person's driver's license, privilege to drive, or privilege to obtain a license for not less than 30 days for the first conviction . . . ."[15]   Thus, because Bottcher's convictions fall under (a)(1)-(3), the court was required to revoke his driver's license for at least 30 days.

### 1.    Lifetime revocations are not limited only to "chronic offenders."

Although the statute establishes certain mandatory minimum periods of revocation, it does not set an upper limit on the length of revocation.  In *Dodge v. Municipality of Anchorage*, the court of appeals held that the statute "authorizes a court to revoke a driver's license for any period of years, including a lifetime revocation."[16] The court proceeded to discuss the circumstances under which a court can impose a lifetime revocation, holding that "a court should impose a lifetime revocation of a driver's license only in extreme cases when the court concludes that such a revocation is required to protect the public."[17]  The court then "reviewed the entire record" in light of this standard.[18]  In particular, the court focused on two factors.[19]  First, the court observed that the defendant had "a twenty-year history of repeated offenses involving the operation of motor vehicles while intoxicated," including one offense in which the

---

[14]     AS 28.15.181(a)(1)-(3).

[15]     AS 28.15.181(b).  There is an exception for the granting of a limited license in cases where the person's ability to earn a livelihood would be impaired.  *Id.*

[16]     877 P.2d 270, 273 (Alaska App. 1994).

[17]     *Id.*

[18]     *Id.*

[19]     *Id.*

defendant caused a person's death.[20]  Second, the court observed that the "present DWI was very serious and involved a traffic accident, a blood-alcohol content of more than twice the legal limit, and the endangerment of numerous people, including Dodge's fifteen-year-old passenger."[21]  In light of these considerations, the court of appeals concluded that the trial court's lifetime revocation of Dodge's license was not clearly mistaken.[22]

In a later case, *Fine v. State*,[23] the court of appeals applied the standard formulated in *Dodge* and vacated the trial court's imposition of a lifetime revocation, holding that such a revocation was excessive in Fine's case.[24]  Fine had been convicted of criminally negligent homicide, assault in the third degree, and driving while intoxicated after an accident in which he crossed over the center line and struck a motorcycle, killing the driver and injuring the passenger.[25]  However, Fine "had not engaged in grossly erratic driving before the collision" and his .08 blood alcohol level was "not particularly high."[26]  Moreover, the court of appeals observed that Fine had "no history of driving while intoxicated" and that the record was insufficient to support a

---

[20]     *Id.*

[21]     *Id.*

[22]     *Id.*

[23]     22 P.3d 20 (Alaska App. 2001).

[24]     *Id.* at 23-24.

[25]     *Id.* at 21.

[26]     *Id.* at 21-23.

finding that Fine, who was 29 years old at the time of the accident, had a "long-term history of alcohol abuse that made him a threat to the public."[27]

The court of appeals' consideration of Fine's license revocation focused on the standard set forth in *Dodge* as well as the particular facts of Fine's case.[28] The court compared Fine's record with that of Dodge and observed that, whereas Dodge had "established himself as a chronic DWI offender who was a worst offender and who was clearly a danger to the public," Fine "simply has no similar record."[29] The court also observed that Fine "has no prior record of driving while intoxicated or similar offenses" and that Fine's blood alcohol at the time of the accident "was less than .10 percent."[30]

The court of appeals further explained that to authorize a lifetime revocation for Fine "would authorize such an extreme punishment for anyone with a similarly ambiguous criminal history."[31] Rather, "[s]uch a punishment should be reserved for chronic offenders, such as Dodge, whose records demonstrate that they never should be allowed to drive a motor vehicle again."[32] The court concluded that there was "no basis to revoke Fine's driver's license for the rest of his life."[33]

Bottcher relies heavily on the court of appeals' statement in *Fine* that lifetime revocations "should be reserved for chronic offenders . . . ." Bottcher points out

---

[27]     *Id.* at 23.

[28]     *Id.* at 23-24.

[29]     *Id.*

[30]     *Id.* at 24.

[31]     *Id.*

[32]     *Id.*

[33]     *Id.*

that at his resentencing hearing, the superior court acknowledged Bottcher was not a chronic offender under *Fine*. Thus, Bottcher argues, in light of *Fine*'s apparent restriction of lifetime revocations to "chronic offenders," the court's lifetime revocation of his license was excessive.

However, there is no reason to believe that the court of appeals intended its discussion of "chronic offenders" in *Fine* to modify the standard it set forth in *Dodge*, according to which the determinative factor in a court's decision to impose a lifetime revocation is whether it is an "extreme case[]" in which "the court concludes that such revocation is required to protect the public."[34] Rather, *Fine*'s language regarding "chronic offenders" should be understood in the context of the court of appeals' comparison of the defendants Fine and Dodge, in which the defendants' respective criminal histories were, in addition to the facts and circumstances of their current offenses, the most salient source of information about the defendants' danger to the public when driving. The court of appeals in *Fine* was not considering a situation in which the defendant lacked a serious criminal history but nevertheless posed a danger to the public when driving by virtue of some other factor — such as a long history of alcohol abuse. In short, *Fine* did not disturb *Dodge*'s holding that the court should impose a lifetime revocation only in extreme cases when such a revocation is required to protect the public. We hold that a finding of chronic offender status is not a necessary predicate to ordering a lifetime revocation of a driver's license.

### 2.     There is no legislative preference for short periods of revocation.

Bottcher argues that the mandatory minimums set forth in AS 28.15.181, which range from 30 days to three years, "indicate a legislative preference for relatively short periods of revocation." In support of this argument, Bottcher cites our observation

---

[34]     *Dodge v. Municipality of Anchorage*, 877 P.2d 270, 273 (Alaska App. 1994).

in *Pears v. State* that a lowering of the mandatory minimum sentence for second-degree murder from 15 to 5 years might eventually alter the typical sentence for that offense.[35]

This argument is without merit. In *Pears* we did not say that the change in mandatory minimums *should* alter the typical sentence; we merely posed a question about what might occur.[36] Moreover, regardless of whether any inferences should be drawn from the mandatory minimums in the statute, Bottcher's argument simply underscores what the court of appeals already indicated in *Dodge*, namely that lifetime revocations should not be imposed routinely, but rather should be reserved for extreme cases when such a revocation is required to protect the public.

In the instant case, the superior court focused its discussion of Bottcher's lifetime revocation on two factors. First, the court considered "the facts and circumstances surrounding this particular offense," the nature of which the court found to be "very, very egregious." Second, the court focused on Bottcher's long history of alcohol abuse, as well as its determination that Bottcher was alcohol-dependent. The court concluded that Bottcher's "actions in this case are testimony to the danger that [he] pose[s]. And I'm not convinced that that will not continue upon [his] release. So I'm going to require that [he] not drive a vehicle." It is clear that the court, following the standard set forth in *Dodge*, imposed the lifetime revocation because it believed that Bottcher's case was an extreme case in which a lifetime revocation was required to protect the public.

---

[35] *Pears v. State*, 698 P.2d 1198, 1203 (Alaska 1985) (stating that "it is not clear, in view of the lowering of the mandatory minimum sentence from fifteen to five years, whether a sentence of twenty to twenty-five years imposed for second degree murder under the prior statute will remain 'typical' under the current statute") .

[36] *Id.*

## B. The Superior Court's Imposition Of The Lifetime Revocation Was Not Clearly Mistaken.

As discussed in the preceding section, the superior court focused its discussion of Bottcher's lifetime revocation on two factors: (1) the facts and circumstances of the present offense; and (2) Bottcher's long history of alcohol abuse. In light of these two factors, the court's finding that Bottcher's case was an extreme case, in which a lifetime revocation was required to protect the public, was not clearly mistaken.

With respect to the first factor, the superior court's judgment about the extreme or "very, very egregious" nature of the facts and circumstances of Bottcher's offense was based on several considerations. First, the court noted that Bottcher was "severely intoxicated," as indicated by Bottcher's high blood-alcohol level and the testimony of a witness at the last bar Bottcher visited the evening of the accident. The court noted that the witness's testimony about Bottcher's highly intoxicated state was "chilling . . . knowing that [he] went out and drove and subsequently struck Saul, narrowly missing Gabriel . . . ." The court also found that Bottcher's refusal to return to the scene of the accident and his attempt to bribe Pomraning manifested an "extreme indifference to the value of human life," an element of the higher offense of second-degree murder.[37] Finally, in discussing the failure to render aid charge, the court noted Bottcher's "callous reaction[]" to his crime, describing it as "striking, severely injuring a 13-year-old who ultimately dies the next day, leaving, not coming back when you're told about it."

---

[37]     AS 11.41.110 (stating that a person commits the crime of murder in the second degree if, among other factors, the person "knowingly engages in conduct that results in the death of another person under circumstances manifesting an extreme indifference to the value of human life").

A comparison of the facts and circumstances of Bottcher's case with those of *Dodge* and *Fine* confirms the soundness of the superior court's judgment that Bottcher's case was an extreme one. Neither Dodge's nor Fine's accidents involved a failure to render aid or an attempt to bribe a bystander. Further, Bottcher's blood-alcohol level of .237 was nearly three times as great as Fine's .08 level[38] and was likely as great or greater than Dodge's blood-alcohol content, which was described as "more than twice the legal limit."[39] In sum, the facts and circumstances of Bottcher's accident are approximately equivalent to Dodge's case, are extreme in comparison to Fine's case, and are extreme by any relevant measure.

The second factor the superior court relied on in imposing the lifetime revocation of Bottcher's license was Bottcher's long history of alcohol abuse and dependency. Unquestionably, Bottcher has a serious alcohol problem, confirmed both by Bottcher's own admission and by the observations of friends and professional therapists. This is a clear contrast with *Fine*, where the court of appeals explicitly found that the record did not support a finding that Fine was a chronic abuser of alcohol.[40] (The court of appeals' opinion in *Dodge* does not include any information regarding Dodge's alcohol use other than his long history of DWI-related offenses.[41]) At Bottcher's resentencing, the superior court made extensive findings with respect to Bottcher's problems with alcohol:

> [T]he file indicates that you've been using alcohol from adolescence up to the time of the offense, been diagnosed as

---

[38]    *Fine*, 22 P.3d at 21.

[39]    *Dodge*, 877 P.2d at 273.

[40]    *Fine*, 22 P.3d at 23.

[41]    *Dodge*, 877 P.2d at 272.

alcohol [dependent]. Now, there were failed attempts to quit. . . . And you broke your own self-imposed rules to reduce the use of alcohol. There's also an indication that you were prescribed medicine to provide relief for mental conditions, but chose to use [it] situationally . . . rather than as prescribed because of the negative side effects of using the medicine with alcohol. . . . [I]n effect . . . this is you choosing alcohol over the medicine.

These findings informed the superior court's judgment that it was "not convinced" the danger Bottcher posed when driving would not resume upon his release, and that it was therefore necessary to revoke Bottcher's license for life in order to protect the public.

Bottcher argues that despite his past struggles with alcohol, he is a promising candidate for rehabilitation. At resentencing, the superior court considered Bottcher's potential for rehabilitation, noting that it appreciated that Bottcher had been tutoring inmates in English literacy. Nevertheless, the court expressed its concern that given Bottcher's long-term drinking problems and alcohol dependence, Bottcher would continue drinking once he was released. The court ultimately described its outlook as "guarded" with respect to Bottcher's potential for rehabilitation and expressed its "hope" that Bottcher could overcome his difficulties with alcohol, but concluded that it could not "rely on" that occurring.

In sum, the superior court, having carefully considered the record, decided that given the egregious facts of Bottcher's present offense and his serious long-term problems with alcohol, a lifetime revocation was required to protect the public. The superior court's decision to impose such a revocation was not clearly mistaken.

V.    CONCLUSION

The superior court applied the correct standard to Bottcher's case, namely, that it should impose a lifetime revocation of his license only if the case was an extreme case in which such a revocation was required to protect the public. In view of the entire

record, the superior court's decision that a lifetime revocation was required in Bottcher's case was not clearly mistaken.  For these reasons, we AFFIRM the decision of the court of appeals, which affirmed the superior court's lifetime revocation of Bottcher's driver's license.